## STANDERWICK v. KANE.

(Court of Appeals of District of Columbia. Submitted January 16, 1923. Decided April 3, 1923.)

No. 1555.

1. Patents ⬩91(4)—Evidence held to show reduction to practice and due diligence by party first to conceive.

Evidence in interference proceedings that the party first to conceive had made a model of the device, which was subjected to shop tests, and then installed in a locomotive and operated for 14 months, during which period other machines were built and placed on the market, incorporating improvements suggested by the test, *held* to show that such party had reduced the device to practice and was diligently testing it at the time the other party entered the field, so as to be entitled to priority.

2. Patents ⬩106(2)—Prior inventor held entitled to count of issue requiring production of substantially constant voltage.

Where a count in interference requiring the regulator of a turbine-driven dynamo to produce a substantially constant voltage originated with the application of the prior inventor, so that it must be interpreted with reference to his disclosure, it does not require a constant voltage, which was not produced by his regulator, but is satisfied by a voltage sufficiently

⬩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

constant for satisfactory operation, which his device did produce, so that he was entitled to make the count.

Appeal from Commissioner of Patents.

Interference proceeding between Reginald G. Standerwick and John J. Kane. From a decision awarding priority to Kane, Standerwick appeals. Reversed, and priority awarded Standerwick.

A. G. Davis and A. E. Bobst, both of Schenectady, N. Y., for appellant.

G. F. De Wein and John J. Kane, both of Milwaukee, Wis., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding, awarding priority of invention to the party Kane, whose application was filed five days prior to that of Standerwick.

The invention relates to turbine-driven dynamos, primarily intended to be mounted on locomotives, to furnish the current for headlights, classification lights, and cab lights. In this sort of an apparatus, a suitable regulator, to control the speed of the turbine under various conditions, is necessary. Of these conditions the most common are increase in steam pressure above normal and decrease in the load of the generator, brought about either by failure of some of the lights or the turning out of some of them. It is obvious that an increase in the speed of the generator would raise the voltage of the current produced. The lights used with such an apparatus being of the incandescent type, a marked increase in the voltage of the current supplied above their rated voltage is destructive. The object of this invention was to supply a regulator to meet these conditions. The issue is expressed in four counts, of which the second and third are sufficiently illustrative, as follows:

"2. In combination, an electric generator, a supply current connected thereto, a variable load connected to said supply circuit, and a magnetic drag for the generator, comprising a winding connected across the supply circuit and shunt to the generator, for maintaining substantially constant voltage on said supply circuit.

"3. In combination, an electric generator, a supply circuit connected thereto, a variable working load connected to said supply circuit, and a magnetic drag comprising a winding connection across the supply circuit and in shunt to the generator, for applying to the shaft of the generator an artificial load which varies inversely as the working load."

Early in May of 1914 Standerwick, an engineer employed by the General Electric Company, his assignee here, was set to work to develop a turbine generator headlight set, with a suitable regulator. In a comparatively short time, the shunt coil regulator forming the subject-matter of the issue was conceived, and a headlight set embodying it was subjected to various shop tests at Lynn, Mass., prior to the latter part of June, 1914. The result of these tests led to the installation of such a set, about June 25, 1914, on a Boston & Maine Railroad locomotive, running between Boston and Portland, Me. This set was

in continuous operation for over 14 months. On June 2, 1914, the engineers of the company authorized the building of a second machine for test purposes, and there also was authorized the building of five more machines to be sent out to various railroads. The building of these additional machines commenced immediately. Early in September Standerwick was directed to visit Schenectady, N. Y., there to advise with Dr. Steinmetz, chief consulting engineer of the Company. The result was the conception of a patentable improvement in the Standerwick regulator, comprising an addition to the shunt coil brake winding. Upon Standerwick's return to Lynn, this addition was incorporated in the Standerwick device and its value demonstrated. Thereupon this improvement was added to the machines then under construction. The building of these machines was followed by the building and sale of many others.

To cover the above improvement of Steinmetz and Standerwick, a joint application was filed concurrently with the application here involved. This joint application was placed in interference and heard in the Patent Office concurrently with the present interference. Each of the tribunals below ruled that Kane was entitled to no earlier date than October 20, 1914, on any of the counts, and therefore awarded priority to the joint inventors. That decision we affirmed on January 2, 1923. Kane v. Steinmetz (C. C. A.) 285 Fed. 1013, Patent Appeal No. 1510.

In the present case, the Examiner awarded priority of invention on all the counts to Standerwick, on the ground that he was the first to conceive and first to reduce to practice, and on the further ground that, irrespective of the question of reduction to practice, his conception was followed by due diligence. The Examiners in Chief sustained the Examiner as to counts 1, 3, and 4, but reversed him as to count 2, on the ground that Standerwick's device is not capable of maintaining "the substantially constant voltage" required by this count; in other words, that he could not make that claim. The Board, however, directed attention to the fact that the subject-matter of the count was disclosed in the joint application. The Assistant Commissioner, holding that there had been no reduction to practice of the Standerwick invention, reversed the decision as to counts 1, 3, and 4, and affirmed as to count 2, without, however, passing upon the question of diligence.

[1] The Patent Office tribunals have all ruled that counts 1, 3, and 4 contain patentable subject-matter, and that they read upon the early Standerwick device. We are clearly of the view that Standerwick has proven reduction to practice as to those counts. Without going into detail, it is sufficient to say that the evidence is to the effect that the structure disclosed by those counts is capable of materially reducing the speed variation attendant upon a change of load by supplying a drag responsive to such change, and that the shop tests and 14 months' use on a locomotive engine demonstrated this. When Kane entered the field Standerwick was diligently testing his device, and the period between that time and the filing date of Standerwick was filled with activity on the part of Standerwick.

[2] As to count 2, the Assistant Commissioner was of the view that the words "substantially constant voltage" have the same import as

the words "within the limitations necessary for satisfactory operation," and hence "that in reality a satisfactory degree of regulation is involved in all four of the counts." Since these claims originated with Standerwick's application, and therefore are to be interpreted with particular reference to his disclosure, we are of the view that "substantially constant," as held by the Assistant Commissioner, is a relative term, and means "sufficiently constant for satisfactory operation"; in other words, that it was a practical, and not a theoretical, question. We agree with the Examiner of Interferences that the evidence discussed by him demonstrates that Standerwick's regulator does maintain a voltage sufficiently constant for satisfactory operation.

The decision, therefore, is reversed as to all the counts, and priority awarded Standerwick.

Reversed.